### WALKER v. TEXAS & N. O. R. CO.
#### No. 11136.

Court of Civil Appeals of Texas. Galveston.
April 17, 1941.

Rehearings Denied May 15, 1941.

Devereaux Henderson and J. A. Copeland, both of Houston, for appellant.

J. C. Hutcheson, III, of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellee.

CODY, Justice.

The question on this appeal is whether the court erred in rendering judgment for defendant notwithstanding the verdict.

About midnight of April 11, 1935, an automobile in which plaintiff was riding as a guest was driven into the side of a box car then standing on defendant's tracks across Clinton Drive in Houston, and plaintiff sustained injuries. At the point of collision Clinton Drive runs east and west, and the tracks cross it at right angles; they are double tracks. The box car was one of a cut of ten cars that had been gathered south of Clinton Drive and were being hauled to appellee's Englewood yard. At the time of the collision the engine and five of the box cars had already crossed Clinton Drive, and the train of which they formed a part had stopped to enable the switchman to open the derail and switch and pass from the spur tracks onto the main line. At this crossing defendant maintained a 600-watt light on the west side of the tracks—the side from which the box car was run into. The night was foggy.

Plaintiff's allegations were that the crossing here involved was unusually hazardous. as a night-time crossing, and that defendant and its employees were negligent in, three particulars on which she requested issues submitted to the jury: (1) whether defendant was negligent in not having a flagman stationed at the crossing; (2) whether defendant was negligent in not causing a flare to be placed on the west side of the crossing; and (3) whether defendant's train violated the law in blocking the crossing more than five minutes.

The procedure followed by defendant in moving for judgment notwithstanding the verdict was regular, and the court granted its motion, and refused plaintiff's motion for judgment on the verdict. The substance of the special issues and the jury's answers are:

No. 1. That the conditions of the crossing in question were such as to render it more than ordinarily dangerous as a night-time crossing on the occasion in question.

No. 2. That defendant knew of such conditions surrounding said crossing at the time of the collision in question.

No. 3. That the failure of defendant to place a flare on the west side of said crossing, at the time and on the occasion in question, was negligence.

No. 4. That such negligence was a proximate cause of the collision in question.

No. 5. That the failure of said defendant to provide a flagman at such crossing, at the time and on the occasion in question, was negligence.

No. 6. And that such negligence was a proximate cause of the collision in question.

No. 7. That on the occasion in question plaintiff was riding in the automobile at

the request of Robert Keyworth (who was driving the automobile in which plaintiff was a guest passenger), for the sole purpose of her own accommodation and pleasure.

No. 8. That the collision in question was not the result of an unavoidable accident.

No. 9. That plaintiff did not fail to keep such a lookout for her own safety as would have been kept by a person of ordinary prudence under the same or similar circumstances.

No. 10. Unanswered.

No. 11. That they did not find that plaintiff, in the exercise of ordinary care, should have realized that Robert Keyworth was driving the Ford automobile in excess of 20 miles per hour at the time and on the occasion in question.

Nos. 12 and 13 were unanswered.

No. 14. That the act of Robert Keyworth in driving the Ford automobile at a speed in excess of 20 miles per hour on the occasion in question was not the sole proximate cause of the collision.

No. 15. That at the time and on the occasion in question Robert Keyworth was driving the Ford automobile at a speed which was excessive under the circumstances.

No. 16. That such driving was negligence.

No. 17. But that such negligence was not the sole proximate cause of the collision.

No. 18. That they did not find that the plaintiff, in the exercise of ordinary care, should have realized that Robert Keyworth was driving the Ford at such excessive rate of speed.

Nos. 19 and 20 were unanswered.

No. 21. That at the time and on the occasion in question Robert Keyworth did not fail to have the Ford under control.

Nos. 22, 23, 24, 25 and 26 were unanswered.

No. 27. That at the time and on the occasion in question Robert Keyworth did not fail to keep such a lookout for objects that might be ahead of him on Clinton Drive as would have been kept by a person of ordinary prudence under the same or similar circumstances.

Nos. 28, 29, 30 and 31 were unanswered.

No. 32. That the failure of Robert Keyworth to slacken the speed of the Ford automobile upon seeing the red light of the automobile which was stopped at the crossing waiting for the train to pass was not negligence.

No. 33. Unanswered.

No. 34. That at the time and on the occasion in question Robert Keyworth was driving his Ford at such speed that he could not stop the same within the range of his headlights.

No. 35. But that such act was not negligence upon his part.

Nos. 36, 37, 38 and 39 were unanswered.

No. 40. That the total amount of damages sustained by plaintiff and proximately caused by the negligence of said defendants, was $19,725.

■ Plaintiff makes the contention in various forms that defendant's motion for judgment notwithstanding the verdict was so inadequate under the requirements of Article 2211, Vernon's Ann.Texas Civil Statutes, as amended, as to fail to invoke the jurisdiction to act on it, and that the court erred in considering it. As sustaining her position, plaintiff cites, and relies upon, Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970; and Myers v. Crenshaw, 134 Tex. 500, 137 S.W.2d 7. Under the last-cited case, the first paragraph of the motion is sufficient to invoke the court's jurisdiction under the first part of said Article 2211. It read: "Because the undisputed evidence herein fails to show any actionable negligence on the part of this defendant, and the attempted finding of the jury to the contrary should, therefore, be disregarded." This is tantamount to stating that the court should have given defendant's requested instructed verdict.

■ Plaintiff contends that the court erred in granting the motion because, among other things, of certain testimony given by one Paulsel to the effect that the train had blocked the crossing for more than five minutes at the time of the collision. At the time of the collision Paulsel was in his automobile waiting for the train to clear the crossing. His testimony was the only testimony to the effect that the train had blocked the crossing for more than five minutes. The object of stopping the train appears to have been to enable the switchman to open the switch so that the train could pass to the main line. A cruising police officer stated that he saw the train a thousand feet away, at which

time it was moving, and that when he got to the crossing it was stopped, and that he was driving between 8 to 15 miles an hour. The train crew stated that the switchman who was to throw the switch was on the engine and that when the engine stopped he immediately opened the switch, and that he could not have been more than half a minute in so doing. And furthermore, it seems that before this trial, the witness Paulsel had stated that the train had blocked the crossing on the occasion in question only about three minutes. It is defendant's contention that this estimate of time by Paulsel is merely a scintilla of evidence that the train had blocked the tracks for more than five minutes. It is quite evident that the trial court so regarded it, because he refused to submit an issue to the jury on it, to which refusal plaintiff reserved her exceptions.

It is defendant's further position that whether or not there was sufficient evidence to go to the jury on the issue as to whether the train blocked the highway for more than five minutes is now out of the case; that it is out of the case because plaintiff, having reserved an exception to the court's refusal to submit the issue, and having failed to bring such exception forward, cannot now complain of it. Of course, the plaintiff cannot complain of the failure of the court to submit the special issue, but she can complain of the court's granting defendant's motion for judgment notwithstanding the verdict for every reason that exists. If the evidence of Paulsel was sufficient to raise the issue of whether the train blocked the crossing for more than five minutes, and a jury finding to the effect would render defendant liable for plaintiff's injuries, then it was error for the court to grant defendant's motion, because, if there was sufficient evidence to raise such issue, the defendant would not be entitled to an instructed verdict; and, if not entitled to an instructed verdict, defendant could not qualify for a verdict notwithstanding the verdict as appears from authorities cited infra. We have no doubt that the testimony of Paulsel as to the length of time the train blocked the crossing was against the preponderance of the evidence, but the fact that such testimony was an estimate does not constitute it a mere scintilla of evidence. His testimony was that of a disinterested witness. The testimony of the train crew was also based on estimate; and the testimony of the po-

lice officer, the other disinterested witness, was likewise based on estimate, the estimate of how long it took him to drive to the train from the point where he first saw it, being dependent on how fast he was driving. We are unable to hold the evidence was insufficient to raise the issue. And if there was any evidence to raise the issue of defendant's liability, it was error for the court to grant the motion. Schumacker v. Whiteside-Appling Motor Co., Tex.Civ.App., 144 S.W.2d 944. It was held in Missouri, K. & T. R. Co. v. McLain, 133 Tex. 484, 126 S.W.2d 474, that where an automobile collided with a train that had blocked the driveway for five minutes in violation of the statute, the question of liability of the railroad was raised. We think, therefore, that the court erred in granting defendant's motion.

Plaintiff contends that, in addition to defendant not being entitled to judgment notwithstanding the verdict, she is entitled to judgment on the jury's answers to special issues numbered 1, 2, 3, 4, 5, 6, and 7, and that the evidence amply sustains such answers.

Special Issue No. 1, under the evidence before the court, was ambiguous. It read: "Do you find from a preponderance of the evidence that the conditions of the crossing in question were such as to render that crossing more than ordinarily dangerous as a night-time crossing on the occasion in question?"

Defendant objected to the issue on the ground that "the term 'more than ordinarily dangerous' is vague, indefinite, general and apt to confuse the jury in that the same naturally would tend to cause the jury to believe that what it inquired about therein is whether the crossing in question at the time was more dangerous than it usually was, that not being an ultimate fact issue in this case and the jury, therefore, might feel that an affirmative answer should be returned to said issue in the event that the proof showed that said crossing was more dangerous at the time of the accident than it customarily was at night, this not being the test of a situation requiring the use of emergency precautions."

In view of the fact that the court granted defendant's motion for judgment notwithstanding the verdict, it is probably technically correct to say that the question of whether the court properly overruled the quoted objection to Special Issue No. 1, is

not before us on appeal. Certainly the court would not have jurisdiction to grant defendant judgment notwithstanding the verdict except upon proper motion and procedure therefor under said Article 2211. But it does appear that it was the foggy condition of the night plaintiff blamed as being the cause of the collision. It was her contention, and her evidence tended to prove that the night was intensely dark because of a dense fog, and that the 600-candle power light which defendant maintained on the west side of the crossing was inadequate to enable a driver of an automobile, approaching from the west and exercising the proper care, to detect the cars which blocked the crossing. It was this fog, according to her contention which imposed upon the defendant the duty to place a flare on the west side of the crossing or to have a flagman wave a lantern, to indicate danger. It was her contention that traffic was very dense at the crossing, that an automobile passed the crossing on the average of one a minute. But it was not disputed that the tracks, on both sides of the crossing, were in full view and an unobstructed view and that for several hundred feet on both sides of the crossing there were no structures or under-growth to conceal a train which was approaching the crossing from a motorist using Clinton Drive who approaches the crossing; and, as indicated, the tracks in question were spur tracks. The driver of the automobile in which plaintiff was a guest testified for her, and testified that the night was so foggy that he could not discern objects more than thirty feet ahead of him.

"It is a settled rule of decision in this state that the duty of a railway company to provide such signals or warnings or to have gates or a watchman at its crossings on a public highway only arises when the situation or surroundings of the crossing render it one of peculiar or more than ordinary danger, or, as expressed in the case of Pennsylvania Ry. Co. v. Matthews, 36 N.J.L. [531] 534:. When 'that particular place is so peculiarly dangerous, that prudent persons could not use the public road in safety, unless the company employed a flagman or other extraordinary means to signal the approach of their trains.' This statement of the rule is quoted with approval by our Supreme Court in the case of Missouri, K. & T. Ry. Co. v. Magee, 92 Tex. 616, 50 S.W. 1013." Robinson v. H. B. & T. Ry. Co., Tex.Civ.

App., 23 S.W.2d 894, 896. It is undisputed that for some 1,200 feet west of this crossing the highway is straight, and that the tracks were only used for switching movements, and not for fast movements. After carefully reviewing the evidence we are forced to the conclusion that the only factor that was present which rendered the crossing "more than ordinarily dangerous as a night-time crossing on the occasion in question" was the fog. And it is settled that where the danger is caused by fog, and applies to all driving over a highway, inclusive of a railroad crossing, there is no duty placed on the railroad company to warn of danger arising because of fog. Texas & N. O. R. Co. v. Stratton, Tex.Civ. App., 74 S.W.2d 741, writ denied; and another case of same style, Tex.Civ.App., 74 S.W.2d 746, writ of error denied; T. & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S. W.2d 1113.

The jurisdiction of the trial court to render judgment notwithstanding the verdict was, as already indicated, sufficiently invoked by paragraph I of defendant's motion for judgment notwithstanding the verdict. Other paragraphs of the motion were sufficient likewise, such as paragraphs III, IV, and V. We will content ourselves by quoting still another paragraph, namely VI: "Because there is no finding that the crossing in question was an unusually dangerous crossing, the jury having found that on the occasion in question the conditions surrounding the crossing in question were such as to render it more than ordinarily dangerous, this being far short of the test necessary to require the taking of unusual precautions and said verdict therefor contains no findings of fact from which an obligation upon the part of the defendant to place flares, lights, warning signs, or take any unusual steps to warn the traveling public of the train on the crossing could arise."

The jury must have answered Special Issue No. 1 in the affirmative only because of its ambiguity. The foggy condition rendered the crossing more than ordinarily dangerous, the evidence before the jury discloses, in the same way and to the same extent, that it rendered every other part of the highway more than ordinarily dangerous. A foggy condition so severe that a driver of an automobile, whose lights are in perfect shape, is prevented from seeing more than 30 feet ahead is itself a warning of danger. Defendant states, and plaintiff

does not deny, that the Ford coupe in which plaintiff was riding had such a momentum at the time of its impact with the box car as to knock the car off its trucks at one end.

■■ We cannot agree with plaintiff's contention that the reversal of a judgment, which has been rendered upon a motion notwithstanding the verdict, requires that judgment be rendered upon the verdict. The only evidence which raised the issue of defendant's liability was, as has been pointed out, the evidence to the effect that the defendant violated the statute against blocking the crossing for more than five minutes. There was no issue submitted thereon to the jury. Certainly in the absence of such issue even being submitted to the jury, the court could not render judgment thereon for plaintiff and against defendant. Of course, if the court had been right in refusing to so much as submit such issue to the jury, he was also necessarily right in rendering judgment for defendant upon its motion. But the sustaining of a demurrer to the evidence (which was involved in granting defendant's motion for judgment notwithstanding the verdict) does not forfeit defendant's right to have a jury pass on the only issue raised by the evidence.

The judgment should be reversed and the cause remanded for a new trial. It is so ordered.