**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY OF TEXAS, Appellant,**

v.

**Kenneth BEASLEY et al., Appellees.**

**No. 3426.**

Court of Civil Appeals of Texas.

Eastland.

Feb. 27, 1959.

Rehearing Denied March 20, 1959.

Watson & Watson, Stamford, for appellant.

Webb & Schulz, Robert E. Ford, Abilene, for appellees.

GRISSOM, Chief Justice.

In May, 1957, Kenneth Beasley and wife and their daughter, Patricia, went to Rotan to visit Mrs. Beasley's parents, Mr. and Mrs. Henry Clay Eakins. Soon after they arrived, all of them went in an automobile driven by Mr. Eakins to near Breckenridge. Early on the return trip they encountered a fog. They stopped for a visit in Hamlin. About 2:30 a. m. they started to the Eakins' home in Rotan but, in the edge of Hamlin, Mr. Eakins drove his automobile into the ninth car back of the

engine of a Missouri-Kansas-Texas Railroad Company of Texas train which was traveling over a crossing at about fifteen miles per hour. The driver was familiar with this crossing. Mr. and Mr. Eakins and Patricia Beasley died as a result of injuries sustained in the collision. The Beasleys sued said railroad company for damages caused by their injuries and the death of their daughter.

A jury found that the crossing was extra-hazardous at the time of the collision; that the railway company was negligent in failing to place flares or fuzees at the crossing and in failing to have a watchman at the crossing to give warning of the presence of the train on the crossing and that each was a proximate cause of the collision. It also found that Mr. Eakins was driving at an excessive rate of speed and that this was negligence but not the sole proximate cause of the collision. Based upon said findings, judgment was rendered for the Beasleys and the railroad company has appealed.

The defendant contends, among other things, that the crossing was not shown to be extra-hazardous, as a matter of law, and that the railroad company was not shown to be guilty of negligence, as a matter of law.

The cross-arm warning sign required by Article 6370, Vernon's Ann.Civ. St. was on the south side of the crossing and plaintiffs approached the crossing from the north as defendant's freight train was traveling over the crossing between plaintiffs and said sign. The defendant had no duty to give plaintiffs any other warning unless the crossing was extra-hazardous. Muniz v. Panhandle & Santa Fe Ry. Co., Tex.Civ.App., 285 S.W.2d 809, 816 (RN RE); Karr v. Panhandle & Santa Fe Ry. Co., 153 Tex. 25, 262 S.W.2d 925, 930. Defendant says the evidence shows conclusively that the area surrounding the crossing was level; that there was no obstruction to the view; that there was no evidence of an illusion which could lead plaintiffs or the driver to believe the crossing was not occupied; that there was no distraction; that, although the highway crossed the railroad tracks at a slightly oblique angle, there was nothing in connection with the angle that could have affected the view of the train moving on the crossing. It says that under the decision in Karr v. Panhandle & Santa Fe Ry. Co., 153 Tex. 25, 262 S.W.2d 925, 931, no significance can be attached to the fact that the highway crossed the railroad track at a slight angle. We are constrained to agree with these contentions. As to these matters plaintiffs' evidence, at most, only arouses a surmise of suspicion and in legal effect is no evidence. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

Defendant further says that the only limitation of visibility was created by fog and that plaintiffs must rely upon fog as proof of an extra-hazardous crossing and that under the decisions of our Supreme Court this cannot be done. In Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113, 1114, our Supreme Court, in an opinion by Judge Hickman, said:

"The material facts are few. About one o'clock at night Grover Carrington left Texas City in his automobile for Galveston. Charles Compton and others accompanied him on the trip. *The night was dark and foggy and the visibility was poor.* A few miles from Texas City the automobile ran into a slowly moving freight train and Compton's death resulted from the collision. The highway ran over a flat prairie country, and in the vicinity of the intersection there was no trees, houses or other obstructions to the view. The highway and railroad track crossed at right angles. The train consisted of 87 cars, and the automobile struck the sixtieth car from the engine. The train was moving eight or ten miles per hour and the automobile much faster.

\*   \*   \*   \*   \*   \*

"Another ground relied upon was the failure of the railroad company to use extraordinary means to give warning, such as to equip its freight cars with lights and have same burning at night, to equip its crossing with signal bells or lights or to have a watchman stationed thereat. Negligence cannot be based upon such omissions, for *the crossing was not extra-hazardous,* and therefore no duty was cast upon the railroad company to observe these extraordinary precautions. It would be difficult to conceive of a railroad crossing at which the hazards would be more obvious than at this one."

The court assumed there was no cross-arm warning at the crossing and, therefore, the railway company, by virtue of violation of the statute, was guilty of negligence as a matter of law. It then held, as a matter of law, that such negligence was not a proximate cause of plaintiffs' injury because *"if travelers on the highway could not see the moving cars * * * they could not have seen the sign."* In the Compton case the Court of Civil Appeals held that the trial court erred in instructing a verdict for the railway company and that the jury would have been authorized to find that it was moving its train over the crossing without lights on its cars on a dark, foggy night without extraordinary warning to those using the highway of the presence of the train on the crossing and that, therefore, the crossing was extra-hazardous and the railway company was negligent. As shown by the quotation above, our Supreme Court rejected that conclusion and held that the trial court properly instructed a verdict for the railway company.

Defendant says the Beasleys must rely upon fog alone and that this case cannot be distinguished from the Compton case. We do not understand that the Beasleys contend there was evidence of an illusion which caused them or their driver to believe the crossing was not occupied by defendant's train, but, if they do, we find no support for such a conclusion. In Walker v. Texas & N. O. R. Co., Tex.Civ.App., 150 S.W.2d 853, 857 (Writ Dis.J.C.), the court said:

"After carefully reviewing the evidence we are forced to the conclusion that *the only factor that was present which rendered the crossing 'more than ordinarily dangerous* as a night-time crossing on the occasion in question' *was the fog.* And *it is settled that where the danger is caused by fog, and applies to all driving over a highway, inclusive of a railroad crossing, there is no duty placed on the railroad company to warn of danger arising because of fog.* Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741, writ denied; and another case of same style, Tex.Civ.App., 74 S.W.2d 746, writ of error denied; Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113.

\* \* \* \* \* \*

" * * * A foggy condition so severe that a driver of an automobile, whose lights are in perfect shape, is prevented from seeing more than 30 feet ahead is itself a warning of danger."

In Texas & N. O. R. Co. v. Stratton, 74 S.W.2d 741, 743 (Writ Ref.), under a similar fact situation, when the night was foggy and visibility bad, it was held, as a matter of law, that the crossing was not extra-hazardous and that the railway company was not negligent. The court said:

"It occurs to this court that whether the visibility was good or bad the trainmen had a right to presume that people using the highway would drive at a rate of speed which would permit them to bring their automobile to a full stop if within reach of their lights it should be discovered that the highway was blocked by a slow moving train. * * * The trainmen had a right to presume that all reasonably careful persons

would so conduct themselves, and, as before stated, did not owe the duty to give any other warning than the presence of a slow moving freight train across the highway * * *."

In this connection the railway company says the fact that the statutory cross-arm was north of the crossing and could not be seen because the train was between the Beasleys and the sign constitutes no evidence that the crossing was extra-hazardous or that the railway company was guilty of negligence in failing to put out flares or fuzees, or station a watchman at the crossing, to warn travelers on the highway that the crossing was occupied by defendant's moving train. In Karr v. Panhandle & Santa Fe Ry. Co., supra, our Supreme Court said that no point could be made that the railway company put one cross-arm on the opposite side of the crossing and that the single sign relieved the railway of any duty to erect a second sign unless it was first established that the crossing was extra-hazardous. It expressly held that placing a cross-arm sign on the opposite side from that approached by plaintiff could "not be considered in determining whether the crossing (was) extra-hazardous."

■ With reference to whether issues were raised as to an extra-hazardous crossing and negligence of the railroad, the Beasleys contend in their brief only that the things hereafter enumerated raised such issues. Plaintiffs say that (1) the fog is a circumstance to be considered and (2) there was a grade fall at the crossing of three-fourths of an inch per hundred feet. There was evidence of a grade fall of "three-fourths of an inch per one-hundred feet coming this way". We have not been directed to any evidence of how many feet said grade fall continued. The same witness said there was "no appreciable grade change" and there was no obstruction of the view of the crossing. Plaintiffs also contend that (3) the track was curved on both sides of the crossing. There was evidence of a slight curve at the crossing. The

pictures of the crossing introduced by both parties clearly show that neither the grade fall, nor the curve in the track, could have affected the notice given the Beasleys or their driver by the train which was then moving over the crossing. Texas & N. O. R. Co. v. Stratton, supra; Texas & N. O. R. Co. v. Adams, Tex.Civ.App., 27 S.W.2d 331, 334 (Writ Dis.); Thompson v. St. Louis Southwestern Ry. Co., Tex.Civ.App., 55 S.W.2d 1084. Plaintiffs point out (4) that the cross-arm sign was north of the crossing and could not be seen because the train was on the crossing. Contrary to their contention, we think there is no material distinction in this regard between this case and Karr v. Panhandle & Santa Fe Ry. Co., wherein the Supreme Court said that such fact could not be considered in determining whether the crossing was extra-hazardous. We are of the opinion that none of the things pointed out by appellees as evidence of an extra-hazardous crossing or negligence found by the jury can fairly be considered as raising issues of fact unless it be the fog. The railway company had no duty to give extraordinary warning of the fact that the train was traveling over the crossing unless the crossing was at the time extra-hazardous. In 24 A.L.R.2d 1201, it is said:

"The later cases, as do the older one, run generally to the effect that ordinarily, to say the least, a railroad company owes highway and street travelers no duty to provide a flagman to warn of the presence of a train moving over a crossing."

The following Texas cases are cited in support of the statement: Texas & N. O. R. Co. v. Compton, 1940, 135 Tex. 7, 136 S.W. 2d 1113; Thompson v. St. Louis Southwestern Ry. Co., Tex.Civ.App., 1932, 55 S.W.2d 1084; Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 1934, 74 S.W.2d 746, error ref.; Texas & N. O. R. Co. v. Beard, Tex.Civ.App., 1936, 91 S.W.2d 1080, error ref.; Texas City Terminal R. Co. v. Allen, Tex.Civ.App., 1944, 181 S.W.2d 727, error ref. At page 1203 it is stated:

"In various cases it has been held that no flagman was required even though visibility was very bad because of fog, smoke, snow, or sleet, in addition to darkness."

Under this quotation the Stratton case is discussed, showing that, although the "night was very dark by reason of fog", a crossing in level country, without obstructions, furnishes no basis for a finding that the crossing was extra-hazardous. Some of the authorities relied upon by appellees were distinguished by Judge Brewster in Karr v. Panhandle & Santa Fe Railway Company in which the Supreme Court affirmed the judgment of the Court of Civil Appeals reversing and remanding judgment for the railway company and holding that, as a matter of law, the crossing was not extra-hazardous. The decision in Texas & N. O. R. Co. v. Stratton, 74 S.W.2d 741, 743, (Writ Ref.), is contrary to appellees' contentions that the issue of extra-hazardous crossing was raised and that the fact that the cross-arm sign was north of the crossing may be considered in determining whether the crossing was extra-hazardous. In the Stratton case "the night was foggy and the visibility was bad". The court said that after the train had blocked the highway and was passing over the highway "it was within itself sufficient warning to persons using the highway * * *." The decision in Texas & N. O. R. Co. v. Beard, Tex.Civ.App., 91 S.W.2d 1080, supports the railway's contention that there is no evidence to sustain the finding of negligence.

■ But, regardless of the applicability of other decisions to the facts of this case, we are forced to the conclusion that the grade fall, the curved track and the one cross-arm sign on the north, under the situation disclosed, do not constitute evidence of probative force that the crossing was extra-hazardous or that the railway company was guilty of negligence found by the jury. The pictures and the entire record compel the conclusion that in an open, level country, with no obstructions to the view, with no illusion and no distractions, and the driver of plaintiffs' car, who was familiar with the crossing, ran into appellant's train near its middle and that the driver, being warned of the fact that the train was on the crossing, threw on his brakes and skidded approximately 106 feet before striking the train. It is evidence from the record that fog is the only thing, other than the speed of the automobile, which could have caused the collision. In 161 A.L.R.2d 117, the general rule is stated as follows:

"Where there is a fog, snowstorm, heavy rain, or other obvious condition which seriously limits visibility at a crossing, persons operating motor vehicles must use increased care proportioned to the danger.—And railroad employees may assume that such increased care will be taken and need not take precautions to prevent a collision with a railroad car, or engine at a highway crossing unless it is evident that a motorist exercising due care may collide with the obstruction; and it seems to have been held in some cases that the railroad may always assume that the motorist will exercise such care in view of reduced visibility that he can see a train in time to avoid colliding with it, so that the railroad is not required to take precautions to avoid injury in spite of such conditions."

In the Compton, Stratton and Walker cases and in Reid v. Texas & N. O. R. Co., Tex.Civ.App., 254 S.W.2d 164, (RNRE), the night was foggy and the visibility poor. Nevertheless, they held that the crossings were not extra-hazardous and that the railway company was not negligent in failing to give extraordinary warning of the presence of trains on the crossings. See also Kypfer v. Texas & P. Ry. Co., Tex. Civ.App., 88 S.W.2d 528 (Writ Dis.); Lundberg v. M-K-T Ry. Co., Tex.Civ.App., 232 S.W.2d 879 (RNRE); Cross v. Wichita Falls & S. R. Co., Tex.Civ.App., 140 S.W.

**944**

2d 567, 569 and Thompson v. St. Louis Southwestern Ry. Co., Tex.Civ.App., 55 S.W.2d 1084, 1085.

We have carefully considered appellees' able brief opposing the contentions of appellant which we have sustained. The case was well tried. It appears to be fully developed. Appellees suggest no additional evidence on these controlling issues. The judgment is reversed and judgment is rendered for appellant.