**SINCLAIR OIL & GAS COMPANY,**
Appellant,

v.

**J. A. ADAMS et al., Appellees.**

No. 6635.

Court of Civil Appeals of Texas.

Beaumont.

June 10, 1965.

Rehearing Denied June 30, 1965.

Second Motion for Rehearing Denied
July 21, 1965.

Orgain, Bell & Tucker, Keith, Mehaffy & Weber, Beaumont, for appellant.

Clark, Thomas, Harris, Denius & Winters, Austin, Mary Joe Carroll, Austin, of counsel, Ward W. Markley, Glenn Faver, Jasper, for appellees.

HIGHTOWER, Chief Justice.

Two separate suits, one by H. W. Mattox and the other by J. A. Adams and D. M. Henderson, were brought against Sinclair Oil & Gas Company and L. V. Musgrove seeking to recover damages for destruction of and injury to said plaintiffs' timber and pine seedling trees as a result of a fire which allegedly spread from a tract upon which Sinclair was operating a gas well to lands owned by the plaintiffs. Sinclair cross-acted against Musgrove for contribution and indemnity. Subsequently, the two suits were consolidated and tried together upon proper motion and order of the court. The court instructed a verdict in favor of Musgrove against all the parties, and the jury found in favor of all plaintiffs

against Sinclair. Hence, this appeal by Sinclair.

Liability of Sinclair was established by affirmative answers of the jury to the following issues:

1. "Do you find from a preponderance of the evidence that the fire of February 12, 1961, made the basis of this lawsuit, started because of the defendant, Sinclair Oil & Gas Company's, operation of its gas well * * *?"

2. (Predicated on affirmative answer to No. 1) Sinclair failed to encircle the gas well with a fire lane before the fire?

Additionally the jury found (Issue No. 5) that Sinclair, under all the facts and circumstances then and there prevailing, failed to keep a proper lookout over its gas well properties.

Issue No. 8 (predicated on affirmative answer to Issue No. 1) that Sinclair or its agents, servants or employees permitted a fire to get under way from their gas well properties.

Issue No. 11 that Sinclair's operation of the gas well, under all the facts and circumstances then and there prevailing, created a fire hazard and (No. 12) Sinclair, its agents, etc., failed to provide or exercise proper control over said fire hazard.

The corollary issues, of negligence and proximate cause, to the primary special issues, above, were also answered affirmatively by the jury.

■ The very crux of this lawsuit hinges upon the question of whether or not the fire in question was occasioned by or from the operation of certain equipment on Sinclair's lease as referred to in Special Issue No. 1 hereinbefore set out. We first treat Sinclair's points of error which assert there was no evidence that it caused the fire as found by the jury in answer to Special Is-

sue No. 1, hence the error of the trial court in overruling its motions for instructed verdict made when plaintiffs rested and again at the close of all evidence. In keeping with our duty we have diligently searched the record for all probative evidence favorable to the appellees and have found none. We set forth the substance of the pertinent evidence:

All tracts of the appellees' lands lay in a northeasterly direction from Sinclair's location, the Mattox and Henderson tracts being adjacent thereto. The fire occurred early on a Sunday afternoon in February, the exact time not being known. No witness saw the fire when it began. L. V. Musgrove, the first witness to observe the fire, had driven to the Sinclair lease that Sunday morning to repair a pump connected to a piece of equipment identified as an LTX Unit. He had been working 30 minutes to an hour when he first became aware of the fire. He was sitting on a small stool facing northeast, at the northeast corner of said unit, such position being on the far side of the unit from that on which the fire started. There was a strong southwest wind of 18 to 20 miles per hour. His attention was drawn to the fire when he first smelled smoke and turned around and looked behind him to the southwest. He then observed that the fire was between 75 and 150 yards inside the timberline to the southwest of him in a semi-circle, 75 to 150 yards long. (All other witnesses testifying had arrived at the scene later.) Another piece of Sinclair equipment, known as a heater-treater, was located approximately 185 feet south of the LTX unit on which Musgrove was working. (Appellees' basic contentions throughout the trial and here are that by some means or manner fire or sparks from this heater-treater was the cause of the fire.) The wind was blowing about 20 miles per hour from the southwest, or from the direction of the heater-treater, toward Mr. Musgrove. When he first saw the fire it was about 3 or 4 feet high. Upon discovering the fire, Musgrove immediately left the scene to report it. He did not go

to the far side of the heater-treater to determine if there was any fire on that side of it from him. He testified:

"Q. All right. Now then I believe that you testified that you left when you saw the fire here in this area? Would you say the fire was approximately 100 yards from you?

A. Well, Mr. Faver—

Q. Would you say approximately?

A. It would be approximately. It could be 75 to 150 yards to the best of my judgment.

Q. All right. If it's 50 yards from the L.T.X. to the heater treater—

A. It would be about another 50 yards then to where the fire was.

Q. About another 40 to 50 yards to where the fire was?

A. Right."

\* \* \* \* \* \*

"Q. Had it gotten, when you first saw it, and as the fire was coming toward you pushed by this wind, had it gotten to any part of the premises of this oil well or this gas well site?

A. No, it was between the gas well site and those woods where I saw it."

Thus, appellees can find no comfort in Musgrove's testimony that the fire was due to Sinclair's operations. He did not establish that the fire was even on the Sinclair lease when he first saw it. He could not say, nor could any other witness, that a fire was burning within the heater-treater on the day or time in question.

Dixon Cobb arrived at the scene about the same time as fire trucks, about 3:00 p. m., and worked at putting out the fire. He testified to the location of a creek in the near vicinity to the west of the Sinclair lease and that there was no evidence of the fire coming from the west across said creek; no evidence of fire coming from the south; the main volume of the fire went northeast:

"A. It got hotter and that caused the wind to blow or something—I don't know the fire was ten or twelve foot high after it got over the hill. It burned the tops out of them pine trees. It burned so fast the bulldozer couldn't get around it. They'd have to keep pulling off to one side."

On cross-examination, after Cobb had testified that the various pieces of Sinclair equipment were painted with aluminum paint, he was asked why they had not been scorched after a 5 to 40 foot flame had come through the lease. He replied:

"A. Well, now it wasn't that high there. *That's where it started.*[1] It got high when you left there, when the wind caught it. It got up to the pine timber when it got high."

He also made the observation that the fire was back burning from the *well* against the wind slowly. As to whether the heater was burning at the time of the fire, he didn't know. He testified that it was not in operation the Thursday before the fire, and did not know whether it was in operation on Friday, Saturday or Sunday, the day of the fire. He said that when it was not in operation he could hear gas loudly blowing from it.

Fire Chief Zager also testified that he did not see any fire immediately south of the well site. Zager admitted that the fire was already burning heavily when he arrived. In regard to the heater-treater, he testified:

"Q. When you got down behind where was the fire?

A. There wasn't any fire that low down sir.

1. All emphasis added.

Q. Where was the fire?

A. Just below the heater—

Q. Just below the heater treater?

A. Yes sir, heater treater.

Q. All right. Did you check to see and, in your opinion, did the fire burn up close to the heater treater?

A. Well, actually, I didn't go in there. No sir."

Appellee Mattox also arrived at the scene of the fire shortly after the fire fighting units. He testified:

"Q. It was a good while, I guess, before you went down in there around the well?

A. Well it was—might have been twenty minutes. I didn't go down there until this unit come up and unloaded. I got him to go on down there and I went on down there.

Q. By then had the fire already burned past the well and unit?

A. Why sure. *That's where it started from, had to burn past it.*"

Leslie Sellers, district superintendent for Sinclair, testified that all the area around a slush pit on the well site had been burned and that he found no evidence of fire west of the creek referred to in the testimony of Dixon Cobb hereinabove. He conceded that the fire must have originated somewhere in the area of the well.

Essentially, appellees rely on circumstantial evidence to sustain the finding of the jury as to the cause of the fire and, given a proper state of facts, such right cannot be denied. Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616; Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194; Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273. Their chief contention being that, although at the time the fire was first discovered there was a strong southwest wind blowing directly toward the well site, the jury had the right to assume as a matter of common knowledge (and we quote from their brief) "that the fire was spread by the gas, first to the south, southeast, or east, and that then, with a change of wind direction, the fire turned to the north and northwest as it was approaching when Musgrove first observed it." Such contention is argued with commendable ingenuity but it is completely conjectural. Most of the witnesses testified that the well site was not free of dead grass, which could have caught on fire but there is no probative evidence in the record that it did, as a result of Sinclair's operations, and subsequently spread to the appellees' property. No witnesses testified that there had been a change of wind direction prior to the fire. No witness even testified that the heater-treater unit was in fact burning on the day of the fire. The record reflects that the fire finally burned across the well site but there is no probative evidence that the fire started on the same or by reason of Sinclair's operations. As hereinbefore noted, Dixon Cobb and appellee Mattox made the bald assertions that the fire did start at the well site. And we again observe that Sinclair's district superintendent, Leslie Sellers, conceded that the fire must have originated somewhere in the area of the well.

■ The combined testimony of all witnesses as to the origin or cause of the fire was simply naked, unsupported opinions and conclusions. They are the same as hearsay and would not support a jury finding even if unobjected to. Dallas R. R. & Terminal Co. v. Gossett, 156 Tex. 252, 294 S.W.2d 377 and cases cited. And see 25 Tex. Jur.2d, Fires, Secs. 22, 23; Pfeiffer v. Aue, 53 Tex.Civ.App. 98, 115 S.W. 300; Missouri-Kansas-Texas R. R. v. Beasley, Tex. Civ.App., 321 S.W.2d 938; Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791.

■ Inasmuch as there is no probative evidence in the record establishing the cause or origin of the fire, and it appearing that the case was fully developed on trial, we hold that the trial court erred in failing to sustain Sinclair's motion for instructed ver-

dict at the close of all the evidence. Obviously, a determination of appellant's other points of error is unnecessary.

■ Sinclair, in effect, has abandoned its appeal from that part of the trial court's judgment in favor of appellee Musgrove by failing to assign error to said court's action. Accordingly, that part of the judgment relating to Musgrove is affirmed with costs adjudged against Sinclair. That part of the judgment in favor of appellees Adams, Henderson and Mattox against Sinclair is reversed and here rendered that said appellees take nothing and pay costs therein incurred.

Affirmed in part, in part reversed and rendered.